UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARLENA D. JOHN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:06-CV-138 |
| ) | (VARLAN/SHIRLEY) |
| WAL-MART STORES EAST, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM & ORDER**

Plaintiff Marlena D. John ("Ms. John") originally filed the present civil action against her former employer, Wal-Mart Stores East, Inc. ("Wal-Mart"), in the Knox County Chancery Court. In her complaint, Ms. John claims violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, in addition to the other state claims of invasion of privacy, defamation/slander per se, intentional/negligent infliction of emotional distress, and negligent supervision/negligent training. Wal-Mart removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. The jurisdictional requirements are satisfied on the basis of diversity of citizenship. 28 U.S.C. § 1332. Wal-Mart has now filed a motion for summary judgment [Doc. 12], which is ripe for determination.

The Court has carefully considered the parties' briefs, supporting materials [Docs. 12, 13, 14, 15, 16, 17, 18, 39-2, 40-2], and oral arguments in light of the entire record and

controlling law. For the reasons set forth herein, Wal-Mart's motion for summary judgment [Doc. 12] will be **GRANTED in part** and **DENIED in part**.

I. Relevant Facts

Ms. John is an African-American who immigrated to the United States from Trinidad and Tobago in the West Indies in June of 2004 [Doc. 17-3 at 2]. Wal-Mart employed Ms. John from late October of 2004 until March 22, 2005 [*Id.* at 3]. Though initially hired as a cashier, Wal-Mart transferred her to a sales associate position in the soft lines department approximately two weeks after starting employment [Doc. 13-2 at 3, 5]. As compared to a cashier, the sales associate position had lower pay of approximately $.20 to $.30 per hour [Doc. 17-3 at 8]. Ms. John claims that Assistant Manager Danny Isbill ("Mr. Isbill") initiated the transfer while Mr. Isbill maintains that Ms. John requested the transfer to soft lines [*Id.* at 5; Doc. 17-2 at 4].

While working as a sales Associate, Ms. John claims various instances of discriminatory treatment by managers and coworkers. As compared to her coworkers, Ms. John felt Mr. Isbill "was paying close attention to [Ms. John] only, focusing on [her] only" and "would just act as though he didn't want to answer" her questions [Doc. 17-3 at 7]. In other words, he paid closer attention to her work, was less willing to answer her questions, and "just had a snotty attitude towards" Ms. John [*Id.*]. Similarly, Ms. John claims Assistant Manager Steven Reeves ("Mr. Reeves") was unwilling to answer her questions and acted "like he really didn't care." [*Id.* at 9]. She further claims that when other employees would

ask Mr. Reeves questions, he would "just treat them in a different manner than he did [her]." [*Id.* at 10]. Additionally, a few of Ms. John's coworkers inquired about her immigration status and spread rumors that she brought friends into the store to shoplift [*Id.* at 12, 13; Doc. 17-5 at 14]. Ms. John made complaints regarding some of these incidents to a customer service manager, Charles Forest ("Mr. Forest"), as she alleges she was instructed to do by Wal-Mart at her orientation [Docs. 17-3 at 6; 17-5 at 17]. After Ms. John no longer worked for Wal-Mart, Mr. Forest told her that she had been discriminated against by some of her Wal-Mart coworkers [Doc. 17-5 at 16]. According to Mr. Isbill, Wal-Mart's open door policy for discrimination complaints permits employees to go to any part of the command to make complaints, but hourly employees, such as customer service managers, are not considered management [Doc. 17-2 at 2].

In February 2005, Co-Manager Danny R. Crowe learned that Ms. John may have purchased some beads for less than regular retail price [Doc. 15 at 1-2]. Ms. John was never questioned about or disciplined for the incident due to lack of sufficient evidence [*Id.*].

On March 9, 2005, Ms. John set aside and purchased two children's outfits priced $.50 each [Doc. 17-4 at 5-6]. Prior to purchasing the outfits, Ms. John claims that she asked her coworker "Jennifer" about the low priced merchandise who replied that she had checked with management about the prices [*Id.* at 6]. At the end of her shift, Ms. John purchased the outfits at the self-checkout aisle and proceeded to exit the store when Mr. Isbill and several other Wal-Mart employees stopped her and asked to see her bag and receipt [*Id.* at 9]. Since Ms. John had to leave on the bus to return home, she gave the merchandise to Mr. Isbill who

gave her $1.00 in return [*Id.* at 14]. Mr. Isbill informed Ms. John that they would talk about the incident the next day [*Id.*].

On March 10, 2005, Ms. John returned to work and met with Mr. Isbill and Ruby Lenoir about the incident [Docs. 17-4 at 17; 17-5 at 1-2]. Later in the day, she met with Assistant Manager Tina Frazier, Danny Crowe, and Travis Street ("Mr. Street") [Doc. 17-5 at 3]. After Ms. John denied putting the wrong price tag on the merchandise, she claims Mr. Street told her she was lying [*Id.* at 3]. At that meeting, she was suspended pending an investigation of the incident [*Id.* at 4]. As she was leaving the store, Ms. John spoke to Mr. Forest who instructed her to seek legal advice [*Id.* at 2]. Approximately two to three days later, Ms. John retained counsel.

About a week and a half after the incident, Ms. John received a call from Mr. Reeves asking her to return to work the following Friday [Doc. 13-2 at 25]. Ms. John did not want to return to work due to bad feelings stemming from the managers' treatment after the incident [*Id.* at 27]. At that time, Ms. John thought Wal-Mart would terminate her for not returning to work [*Id.*]. Ms. John's termination became effective March 22, 2005 for job abandonment [Doc. 15 at 2].

Wal-Mart conducts, on average, six or seven investigations of employee theft per month [Doc. 17-8 at 2]. According to Mr. Street, not all employees suspected of theft are suspended [*Id.*]. Such determinations are based on investigatory interviews, but Mr. Street

does not recall why he suspended Ms. John [*Id.*]. Subsequent to the suspension of Ms. John, at least two white employees suspected of theft were not suspended [*Id.* at 3].

II.     Analysis

    A.  Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of

witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

    B. Racial and National Origin Discrimination

Ms. John makes claims of race and national origin discrimination under the THRA, Tenn. Code. Ann. § 4-21-101, *et seq*. The Supreme Court of Tennessee has held that "an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006). Under both the state and federal frameworks, a plaintiff may establish the prima facie case of racial or national origin discrimination through either direct evidence of intentional discrimination by the defendant or circumstantial evidence that creates an inference of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

    1. Direct Evidence of Race and National Origin Discrimination

Ms. John first argues that she has presented direct evidence of discriminatory animus. Direct evidence refers to "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (*quoting Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005)). In other words, direct evidence proves the

occurrence of discrimination without requiring further inferences. *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 640 (6th Cir. 2006).

Ms. John argues she has presented direct evidence of intentional discrimination by Wal-Mart. Specifically, Ms. John relies on a statement made by Mr. Forest, a customer service manager at Wal-Mart, after he learned of the incident and subsequent investigation of Ms. John. Ms. John maintains that Mr. Forest informed her that she was being discriminated by Wal-Mart managers due to her race and national origin [Doc. 40-2 at 2-3]. At oral argument, Ms. John's counsel admitted that Mr. Forest's statement was the sole piece of direct evidence of discrimination in this case.

Wal-Mart argues Ms. John erroneously relies on Mr. Forest's statement as direct evidence and has failed to present any other direct evidence of discrimination. According to Wal-Mart, Mr. Forest's alleged statement is hearsay and inadmissible as hearsay because the statement did not concern a matter within his scope of his agency or employment. Wal-Mart points to Ms. John's failure to present evidence of Mr. Forest's involvement in the decision to investigate Ms. John's suspicious purchase, participation in the investigation, or influence over members of Wal-Mart managers during the investigation. Thus, Wal-Mart argues that the alleged statement is inadmissible hearsay and fails to establish direct evidence of discrimination.

The evidentiary issue as to whether Mr. Forest's statement is inadmissible as hearsay need not be addressed as to the direct evidence claim. The Sixth Circuit has previously held

that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003) (citing *Hopson v. DaimlerChrysler Corp.,* 306 F.3d 427, 433 (6th Cir. 2002)). Nevertheless, such statements "may constitute circumstantial evidence of discrimination." *Hopson*, 306 F.3d at 433. Ms. John has not presented any evidence establishing Mr. Forest's direct involvement in the Wal-Mart investigation. Based on the record, Mr. Forest initially learned of the suspension directly from Ms. John [Doc. 17-5 at 2]. Thus, reliance on Mr. Forest's statements about Wal-Mart's discrimination toward Ms. John requires further inferences which are incompatible with the definition of direct evidence. Based on the failure to provide sufficient direct evidence of discrimination, the court must conclude that Ms. John has failed to satisfy the direct evidence branch of her race or national origin discrimination claim for summary judgment purposes.

2. Circumstantial Evidence of Race and National Origin Discrimination

Ms. John also asserts that she has produced circumstantial evidence of discrimination to establish her Title VII claim. Under the circumstantial evidence burden-shifting framework, a plaintiff first sets forth "a prima facie case of discrimination, at which point a presumption arises that the employer unlawfully discriminated against" the plaintiff. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). At that point, the defendant must provide a legitimate, nondiscriminatory reason for taking the challenged employment action. *Carter*, 349 F.3d at 273. If the defendant satisfies this burden, the

plaintiff must prove that the defendant's proffered reason is pretextual and actually hiding unlawful discrimination. *Id.* A plaintiff establishes pretext by showing that the reason offered by the defendant: (1) has no basis in fact; (2) did not actually motivate the employment decision, or (3) was insufficient to warrant the employment decision. *Grizzell*, 461 F.3d at 720.

To establish a prima facie case for discrimination, a plaintiff must show that (1) she is a member of a protected group; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was treated differently from similarly situated members of the unprotected class. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

In the present case, Wal-Mart does not dispute that Ms. John has satisfied the first three elements of the prima facie case. First, she is an African-American from Trinidad and Tobago, so she qualifies as a member of a protected group because of her race and national origin. 42 U.S.C. § 2000e-2(a)(1); Tenn. Code Ann. § 4-21-101. Second, the Sixth Circuit recognizes suspensions as adverse employment actions. *See Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Thus, Ms. John's suspension from her sales associate position with Wal-Mart sufficiently satisfies the second element of the prima facie case. Third, there is no dispute that Ms. John was qualified to work as a sales associate. Thus, Wal-Mart solely argues that Ms. John has no evidence that she was treated differently from similarly situated individuals outside the protected class, the fourth element of the prima facie case for discrimination.

Specifically, Wal-Mart argues that Ms. John has presented no evidence of differing treatment by Wal-Mart toward other associates suspected of theft or violating Wal-Mart's Associate Purchase Policy [Doc. 13 at 6].

In response, Ms. John argues that Wal-Mart inconsistently applied its policy of suspending employees investigated for theft. To support this argument, Ms. John relies on the deposition testimony of Mr. Street, District Loss Prevention Supervisor at Wal-Mart. In his deposition, Mr. Street admitted that unlike Ms. John, two white employees suspected of theft were not suspended pending investigation [Doc. 17-8 at 3]. Ms. John, as the non-moving party, has pointed to deposition testimony evidence that shows she was treated differently by Wal-Mart as compared to white employees suspected of theft. The record is not fully developed as to the circumstances surrounding Wal-Mart's investigation of the white employees, but at the summary judgment stage, Ms. John benefits from this Court viewing all facts and inferences in the light most favorable to her as the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Accordingly, Mr. Street's deposition testimony, if viewed in a light most favorable to Ms. John, shows that Ms. John was treated differently from similarly situated white employees. Thus, Ms. John has satisfied the prima facie case for her discrimination claim.

Because Ms. John has established the prima facie case for discrimination, Wal-Mart must provide a legitimate, nondiscriminatory reason for its adverse employment action against Ms. John. *See Grizzell*, 461 F.3d at 719-20. Notably, Wal-Mart need only articulate a valid rationale, namely that it suspended and terminated Ms. John for reasons unrelated to

the alleged discrimination. *Hartzel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). In the present case, Wal-Mart has articulated a valid rationale for suspending Ms. John, namely, that Ms. John was suspected of theft [Doc. 13 at 7].

In response, Ms. John argues that Wal-Mart's proffered legitimate nondiscriminatory reason was pretext for race and national origin discrimination because it had no basis in fact for suspending her. Viewing the facts and all inferences in a light most favorable to Ms. John, she has established sufficient pretext to survive summary judgment, namely that Wal-Mart's proffered reason for the adverse employment action was insufficient to warrant the employment decision. In Mr. Street's deposition, he agrees that he had no proof that Ms. John shoplifted, changed prices on any items, or proof that anyone changed the prices [Doc. 17-8 at 9]. He also does not recall why he suspended Ms. John [Doc. 17-8 at 34].

As previously noted by the Sixth Circuit, "an employer's true motivations are particularly difficult to ascertain" in discrimination cases, "thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004). This is one such case with an "'elusive factual question' . . . incapable of resolution on summary judgment." *Id.* (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981)). While Wal-Mart has presented evidence of previous suspicious purchases by Ms. John to warrant Wal-Mart's investigation of her, there is a genuine issue of material fact as to whether Wal-Mart's suspension was warranted given Mr. Street's testimony about the lack of proof against Ms. John. This issue of material fact is particularly salient since other white employees suspected

11

of theft were not suspended pending investigation. Thus, though Ms. John may fail at trial to establish her discrimination claim under the preponderance of the evidence standard, she benefits from all inferences being construed in her favor at the summary judgment stage. Accordingly, summary judgment would be inappropriate at this time.

      C. <u>Hostile Work Environment</u>

There is a valid racial discrimination claim "when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive to create a discriminatorily hostile or abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 17 (1993). To establish a prima facie case of hostile work environment, Ms. John must show: 1) she is a member of a protected class; 2) she was subjected to unwelcome racial and/or national origin harassment; 3) the harassment was based on race and/or national origin; 4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001); *Boutros v. Canton Reg'l Transit Auth.*, 997 F.2d 198, 203 (6th Cir. 1993) (finding the elements for a claim of racially hostile work environment equally applicable to a claim of national origin harassment). The determination of whether an environment is "hostile" or "abusive" requires looking at the totality of circumstances. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). Furthermore, the conduct must be both objectively and subjectively hostile or abusive. *Harris*, 510 U.S. at 21-22.

In the present action, Ms. John claims the actions of Wal-Mart managers and coworkers created a hostile work environment based on race and/or national origin. Specifically, she claims that her transfer to a sales associate position in soft lines, the reluctance of certain managers to answer her questions, the inquiries of coworkers as to her immigration status, the rumors spread about her assisting friends in shoplifting from Wal-Mart, and her treatment during and subsequent to the theft investigation collectively establish a hostile work environment [Doc. 17 at 18]. In viewing all facts and all inferences in a light most favorable to Ms. John as the non-moving party, this Court finds that Ms. John has failed to establish the prima facie case for her hostile work environment claim.

Assuming that Ms. John has satisfied the first two elements of the prima facie case, Ms. John has failed to show that any of the harassing conduct she complains of was based on her race. The Sixth Circuit has held that "alleged harassing acts cannot be considered in the hostile environment analysis" when a plaintiff has "not shown that the [] conduct he complains of had anything to do with his [status as a member in a protected class]." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). In *Bowman*, the Sixth Circuit focused on the plaintiff's failure to "allege[] that [his supervisor] made a single comment evincing an anti-male bias" in affirming summary judgment. *Id.* Similarly, Ms. John has not shown that any of the alleged harassment was due to her race. Similar to the unsuccessful claimant in *Bowman*, Ms. John admits that no one at Wal-Mart ever made a statement about her race or the color of her skin [Doc. 17-3 at 13]. Ms. John also admits that Wal-Mart managers treated another black sales associate in her department "very well" [Doc. 13-2 at

38]. Thus, Ms. John's own testimony does not support her claims of harassing behavior based on race. Additionally, the comments made by Ms. John's coworkers are exclusively about her immigration status, so such comments add nothing to her race claim. Due to the lack of evidence showing any harassment based on race, Ms. John has not established the prima facie case as to racial hostile work environment.

Ms. John has also failed to show that the alleged harassment was due to her national origin. While she claims that certain assistant managers treated her differently from other employees, Ms. John has provided no evidence of any discriminatory comments made by any such managers as to her national origin. While Ms. John does allege comments made by coworkers as to her immigration status, nothing in Title VII "makes it illegal to discriminate on the basis of citizenship or alienage." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 95 (1973) (noting that "it would be unlawful for an employer to discriminate against aliens because of race, color, religion, sex, or national origin"). In the present case, Ms. John has not shown that such comments were due to her national origin of Trinidad and Tobago. Rather, the comments made by coworkers only related to her status as an immigrant, an unprotected class according to the Supreme Court. *Id.* Also, Ms. John has not presented any evidence connecting the rumors about her assisting in shoplifting to her national origin. Though she may have been disturbed by such rumors, it is important for this Court "to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman*, 220 F.3d at 464 (quoting *Faragher,*

524 U.S. at 788). In the present case, without presenting the requisite support for her claims, Ms. John cannot satisfy the third prong of the prima facie case.

Even if this Court were to consider the some of the minimally arguable claims by Ms. John as satisfying the third element of the prima facie case, Ms. John would still fail because these claims are not "'sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment'." *Harris*, 510 U.S. at 21 (*quoting Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 67 (1986)). Factors to consider in this analysis include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Notably, this Court must look at the totality of the circumstances in performing this analysis.

Considering all of the incidents Ms. John complains of as a whole, her allegations simply lack the frequency and severity as compared to other cases that have survived summary judgment. *See Jackson v. Quanex Corp.*, 191 F.3d 647, 647-68 (6th Cir. 1999) (involving a plaintiff subject to incidents of racist slurs, racist graffiti, physical assaults, and other interference with job duties); *Boutros*, 997 F.2d at 198-208 (involving repeated ethnic slurs made by coworkers). During the approximately five months of Ms. John's employment at Wal-Mart, she was subjected to no more than ten comments about her immigration status made by a handful of coworkers, in addition to the rumor about helping friends shoplift. None of the comments were physically threatening. While the alleged conduct could arguably be considered humiliating, Ms. John's own words show that she was simply

"bothered" rather than humiliated by her coworkers' comments [Doc. 13-2 at 10-11] ("Well, it was kind of getting like annoying because that's really none of their business, and they were asking me my personal business, and that had nothing to do with my job.") Additionally, the complained of incidents do not appear to have unreasonably interfered with her work performance as Ms. John testifies that her work performance in soft lines was "really good." [Docs. 17-3 at 10; 13-2 at 6]. Thus, Ms. John's allegations simply lack the severity and pervasiveness required to establish the fourth prima facie element.

As Ms. John has failed to establish both the third and fourth prima facie elements of a hostile work environment claim, it is unnecessary for this Court to address employer liability, the fifth prima facie element.

After evaluating Ms. John's allegations, she has failed to provide the requisite support to establish a prima facie case for her hostile work environment claim. Accordingly, Wal-Mart's motion for summary judgment as to this claim is granted.

### D. Invasion of Privacy

Ms. John asserts a claim of invasion of privacy, namely an intentional intrusion by Wal-Mart on her seclusion and solitude [Doc. 1-2 at 7]. Wal-Mart argues that it is entitled to summary judgment on this claim because Wal-Mart has the right to investigate potential thefts [Doc. 13 at 12]. Ms. John concedes that she cannot support her claim of invasion of privacy [Doc. 17 at 19]. Accordingly, Wal-Mart's motion for summary judgment on Ms. John's claim for invasion of privacy is granted.

E. Defamation/Slander Per Se

Ms. John asserts a claim for defamation/slander per se against Wal-Mart [Doc. 1-2 at 7-8]. Wal-Mart argues that this claim fails as a matter of law because it occurred outside the six month statute of limitations period from the date the oral statement was uttered [Doc. 13 at 13]. Ms. John concedes that the defamation/slander per se claim falls outside of the six month statute of limitations period [Doc. 17 at 19]. Accordingly, Ms. John's claim for defamation/slander per se fails as a matter of law.

F. Intentional or Negligent Infliction of Emotional Distress

Ms. John asserts claims for intentional or negligent infliction of emotional distress [Doc. 1-2 at 8]. Wal-Mart argues that Ms. John has produced no evidence of outrageous conduct to support her claim of intentional infliction of emotional distress. As for the negligent infliction of emotional distress claim, Ms. John has presented no scientific or medical evidence to support her claims [Doc. 13 at 15-16]. Ms. John concedes that she cannot support her claims of intentional or negligent infliction of emotional distress [Doc. 17 at 19]. Accordingly, Ms. John's claims for intentional or negligent infliction of emotional distress fail as a matter of law.

G. Negligent Supervision and Negligent Training

Ms. John asserts claims for negligent supervision and negligent training [Doc. 1-2 at 8]. Wal-Mart argues that it is entitled to summary judgment as Ms. John's claims are barred by the Tennessee Workers' Compensation Statute, Tenn. Code Ann. § 50-6-108(a) [Doc. 13

at 17-18]. Additionally, Wal-Mart argues that Ms. John has failed to produce evidence of an injury [Doc. 13 at 18-19]. Ms. John concedes that she cannot support her claims of negligent supervision and negligent training [Doc. 17 at 19]. Accordingly, Ms. John's claims for negligent supervision and negligent training fail as a matter of law.

III. Conclusion

For the reasons set forth herein, Wal-Mart Stores East, Inc.'s motion for summary judgment [Doc. 12] is **GRANTED in part** and **DENIED in part**, whereby plaintiff Marlena D. John's claims of hostile work environment, invasion of privacy, defamation/slander per se, intentional or negligent infliction of emotional distress, and negligent supervision and negligent training will be **DISMISSED with prejudice**. The case will proceed to trial on plaintiff Marlena D. John's remaining claim against defendant Wal-Mart Stores East, Inc.

IT IS SO ORDERED.

                                                s/ Thomas A. Varlan
                                                UNITED STATES DISTRICT JUDGE